**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LOGOS I. FARROW,

     Plaintiff,

v.                                    Case No. 8:25-cv-02417

CITIBANK, N.A., et al.

_____/

**CITIBANK, N.A.'S MOTION TO COMPEL**
**ARBITRATION AND STAY PROCEEDINGS AND**
**INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendant, CITIBANK N.A. ("Citibank"), by and through its undersigned counsel, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, respectfully moves this Court for the entry of an order compelling arbitration of all claims asserted in this matter and to stay these proceedings pending the completion of arbitration, and in support thereof states as follows:

**INTRODUCTION**

On September 9, 2025, Plaintiff, LOGOS I. FARROW, ("Plaintiff"), filed a Verified Complaint and Demand for Trial by Jury purporting to allege a claim against Citibank for damages for alleged violation of the Fair Credit Reporting Act (FCRA) with regard to two of Plaintiff's credit card accounts maintained with Citibank. *See Complaint* (D.E. 1), at ¶¶ 21-30, 32-38, 46-52, and 123-142.

As directly evidenced in the Complaint, Plaintiff's claims stem from his credit card accounts maintained with Citibank. The credit card accounts at issue

1

are a Citi Double Cash credit card account currently ending in account number 5367 that was issued to Plaintiff on or about April 15, 2021 (the "Citi Double Cash Account"), and a Costco credit card account currently ending in 0116 was issued to Plaintiff on or about September 24, 2021 (the "Costco Account" or collectively with the Citi Double Cash Account, the "Accounts"). *See Declaration of Kelly Booth, Exhibit "A"*[1] *(hereafter "Booth Decl.")* Both Accounts are governed by substantially identical Card Agreements that contain a valid and enforceable arbitration provision by which Plaintiff expressly agreed to arbitrate "any claim, dispute or controversy between you and us arising out of a related to your Account, a previous related Account or our relationship." *See Booth Decl., Exh. 1 and 2.* As evidenced by the Declaration of Kelly Booth, Plaintiff opened the Citi Double Cash Account on or about April 15, 2021 and the Costco Account on or about September 24, 2021; the Card Agreement for both Accounts includes an arbitration provision; Plaintiff did not opt out of either arbitration provision; and Plaintiff subsequently made charges on both Accounts. Thus, the arbitration provision in the Card Agreements, as more fully defined below, is valid and enforceable under applicable law, and clearly encompasses Plaintiff's alleged claims against Citibank. *See Id.*

Accordingly, the Court should grant Citibank's Motion and compel arbitration of all claims in this action because: (1) the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA") applies; (2) the arbitration provision is valid and

---

[1] The Declaration of Kelly Booth and the exhibits referenced therein are collectively attached hereto as **Exhibit "A."**

150064132-1

enforceable; (3) the alleged claims fall squarely within the scope of the arbitration provision; and (4) Citibank has not waived its right to compel arbitration as this Motion has been filed as Citibank's initial response to the Complaint prior to engaging in any discovery or motion practice. For these reasons, and as discussed below, the Court should enforce the parties' contractual agreement to arbitrate all claims, and should stay these proceedings, including all discovery, pending completion of the arbitration.

## BACKGROUND

On or about April 15, 2021, Citibank issued the Citi Double Cash Account to Plaintiff and, on or about September 24, 2021, Citibank issued the Costco Account to Plaintiff. *See Booth Decl,* ¶ 4. Both Accounts are governed by a written Card Agreement that was provided to Plaintiff at the time he applied for the respective Accounts. *Id.* at ¶¶ 6 and 9. The arbitration provision within each Card Agreement contains the following:

### Rules for rejecting this arbitration provision

You may reject this arbitration provision by sending a written rejection notice to us at PO Box 790085; St. Louis, MO 63179-0085.[2] Your rejection notice must be mailed within 45 days of Account opening. Your rejection notice must state that you reject the arbitration provision and include your name, address, Account number and personal signature. No one else may sign the rejection notice. Your rejection notice will not apply to the arbitration provision(s) governing any other account(s) that you have or had with us. Rejection of this arbitration

---

[2] The Card Agreement for the Citi Double Cash Account and the Costco Account provide different addresses to which a rejection notice should be mailed, but the quoted language is otherwise identical.

3

150064132-1

provision won't affect your other rights or responsibilities under this Agreement, including use of the Account.

*Id.* at ¶¶ 7 and 10 and Exh. 1 and 2.   Plaintiff did not reject the arbitration agreement for either of the Accounts. *Id.* at ¶¶ 8 and 11.  Plaintiff used both of the credit cardd and received all benefits from the Accounts. *Id.* at ¶¶ 12-13 and Exh. 3 and 4. Thus, Plaintiff accepted the terms of the Card Agreement including the arbitration provisions associated with the Account and his relationship with Citibank is bound by the terms of the arbitration provisions.   Further the arbitration provisions contain the express language that:

### ARBITRATION

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**

This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action.  In arbitration, disputes are resolved by an arbitrator, not a judge or jury.  Arbitration procedures are simpler and more limited than in court.  This arbitration provision is governed by the federal arbitration act (FAA), and shall be interpreted in the broadest way the law will allow.

**Covered claims**

- **You or we may arbitrate** any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims").
- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

*See Booth Decl. Exh. 1 and 2.*

The arbitration provision also states that:

> **Survival and Severability of Terms**
> This arbitration provision shall survive changes in this Agreement and termination of the Account or the relationship between you and us, . . ..

*See Id.*

The arbitration provision also contains a delegation provision by virtue of incorporation of the rules of the American Arbitration Association ("AAA"), stating that:

> **How arbitration works**
> - Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim if filed ("AAA Rules"), . . ..

*See Id.*

## LEGAL ARGUMENT

### I.    Standard of Review

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts[.]"). The United States Supreme Court has made clear that the FAA

is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). As the Supreme Court confirmed, this provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (citations omitted).

There is no question that the FAA applies to this dispute as the Arbitration Agreement expressly provides that it must be enforced pursuant to the FAA. *See Booth Decl. Exh. 1 and 2*. Further, the United States Supreme Court has made it clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). The Account was opened, and used, by Plaintiff, who resides in Florida. *See Complaint* (D.E. 1)*, ¶ 9*. Meanwhile, the Account was issued by Citibank, a national banking association located in South Dakota. *See Booth Decl. ¶ 1*. Accordingly, the FAA applies.

Under the FAA, the required elements to compel arbitration are: (i) whether a valid written agreement to arbitrate exists; (ii) whether an arbitrable issue exists; and (iii) whether the right to arbitration was waived. *See Senti v. Sanger Works*

6

*Factory, Inc.,* 2007 WL 1174076 at *2 (M.D. Fla. 2007); *Williams v. Eddie Acardi Motor Co.,* 2008 WL 686222 at *4 (M.D. Fla. 2008); *Fla. Farm Bureau Ins. Cos. V. Pulte Home Corp.,* 2005 WL 1345779 at *3 (M.D. Fla. 2005) (quoting *Seifert v. U.S. Home Corp.,* 750 So. 2d 633, 636 (Fla. 1999)). The trial court's role in deciding whether to compel arbitration is limited to considering these elements and the inquiry must be made against the background of the "liberal federal policy favoring arbitration agreements" and "it is the role of courts to 'rigorously enforce agreements to arbitrate.'" *Klay v. All Defendants,* 389 F. 3d 1191, 1200 (11th Cir. 2004) (emphasis added), *citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985); *Nestler-Poletto Realty, Inc. v. Kassin, 730 So.2d 324, 325* (Fla. 4th DCA 1999). Indeed, the Supreme Court has consistently held that the FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi,* 132 S. Ct. 12, 25-26 (2011) (citations omitted); *see also Concepcion,* 563 U.S. at 344 (confirming that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'").

## II.   The Arbitration Agreement is Valid and Enforceable.

An arbitration agreement governed by the FAA, like the arbitration provision here, is presumed to be valid and enforceable. *See Palidino v. Avnet*

7

150064132-1

*Computer Technologies, Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998) (The FAA "creates a presumption in favor of arbitrability"). Furthermore, it is well settled that the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

To determine whether the parties have agreed to arbitrate, courts apply generally accepted state-law principles governing the formation of contracts. *Williams v. Eddie Acardi Motor Co.,* Case No. 3:07-cv-782-J-32JRK, 2008 U.S. Dist. LEXIS 117503, at * 13 (M.D. Fla. Jan. 28, 2008). In other words, while the FAA exclusively governs the Arbitration Agreement's enforceability according to its terms, South Dakota law, pursuant to the choice-of-law provision, governs the determination of whether a valid agreement to arbitrate exists. *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1193-94 (S.D. Cal. 2013) (holding that South Dakota law applied under Citibank's choice-of-law provision and applicable choice-of-law test); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1176-77 (N.D. Cal. 2012) (same); *accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Plaintiff received notice of the arbitration provision contained within the Card Agreement in April 2021 as to the Citi Double Cash Account, and in

8

September 2021 as to the Costco Account.  In both instances, the Plaintiff took no action to reject the arbitration provision, and proceeded to use the Accounts.  *See Booth Decl. ¶ 6-13, Exh. 1 -4.*  Under South Dakota law, this is sufficient to establish Plaintiff's assent to the Card Agreements – including the arbitration provision contained therein.  *See* S.D. Codified Laws § 54-11-9 ("use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . ."); *Ventura v. 1st Fin'l Bank*, No. C 03-4515 JF, 2005 WL 2406029, at *5 (N.D. Cal. Sept. 29, 2005) (noting that S.D. Codified Laws § 54-11-9 "expressly authorizes contract formation by an individual's use of a credit card"); *Fedotov v. Peter T. Roach & Assocs., P.C.*, No. 03 Civ. 8823(CSH), 2006 WL 692002, at *2 (S.D.N.Y. Mar. 16, 2006) (under South Dakota law, plaintiff was bound by using cards after receiving card agreements). Moreover, South Dakota law, like federal law, strongly favors arbitration, and resolves any doubts in favor of arbitration. *See Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814, 2002 SD 82 (S.D. 2002) ("We have consistently favored the resolution of disputes by arbitration . . . There is an overriding policy favoring arbitration when a contract provides for it."). Thus, Plaintiff accepted the arbitration provision and is bound by the terms thereof.

9

### III.   The Claims Fall Squarely Within the Scope of the Broad Arbitration Agreement.

Plaintiff's claim falls squarely within the broad arbitration provision. In determining whether a particular claim falls within the scope of an arbitration agreement, the Court's focus is on the factual underpinnings of the claim rather than the legal theories alleged in the complaint. *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987); *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp.2d 1236, 1256 (S.D. Cal. 2000). As the Seventh Circuit explained: "[t]he touchstone of arbitrability in these circumstances is the relationship of the claim to the subject matter of the arbitration clause." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern.*, 1 F.3d 639, 643 (7th Cir. 1993) (citation omitted). Where the clause is broad, as is the case here, there is a heightened presumption of arbitrability such that "'[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).; *accord Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a presumption that the claims are arbitrable").

The Supreme Court has held that a presumption of arbitrability exists where a contract contains an arbitration clause, and that an order to arbitrate should not

10

be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). This presumption "is particularly strong" where, as here, "the arbitration clause in question is broad."[3] *Commc'ns Workers of Am.*, 475 U.S. at 650; *see also Prima Paint*, 388 U.S. at 398 (arbitration provision requiring arbitration of claims "arising out of or relating to" an agreement constitutes a "broad arbitration clause."); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (holding that an arbitration clause that provided arbitration for any dispute that "ar[ose] out of or related to" the agreement was a broad clause, "capable of expansive reach"); *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 176 (3d Cir. 2010) (enforcing a "sweeping" arbitration clause in credit card agreement that applied to "any claim, dispute or controversy by either you or us against the other … arising from or relating in any way to the Cardmember Agreement"); *Davisson*, 644 F. Supp. 2d at 959 ("When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. … in such a case, only an express provision excluding a specific dispute, or the most forceful

---

[3] The arbitration provision states in relevant part that, "[t]his arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow." The arbitration provisions go on to state in their "Covered claims" sections that, "[y]ou or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims)."

11

evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.") (emphasis in original)).[4] Additionally, the Supreme Court has made clear that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Randolph,* 531 U.S. at 91. And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Here, it is clear from the face of the Complaint that the subject claims fall within the scope of the arbitration provision as the alleged claims are for damages for alleged violation of the FCRA based on Citibank's reporting of the Accounts to consumer reporting agencies and its investigation of Plaintiff's disputes regarding the same. The arbitration provision extends to all "Claims," "no matter what legal

---

[4] Numerous courts across the country have enforced Citibank's arbitration provisions containing similar (if not identical) language to the provision currently before the Court. *See, e.g., Ware v. Citigroup Fin. Prods., Inc.*, No. 1:13-cv-00369-CC, Dkt. No. 37 (N.D. Ga. March 5, 2014); *Samenow v. Citicorp Credit Servs., Inc.*, No. 16-1346 (CKK), 2017 WL 2303962 (D.D.C. May 25, 2017); *Bey v. Citi Health Card*, No. 15-6533, 2017 WL 2880581 (E.D. Pa. July 6, 2017); *Lenkowski v. Citibank, N.A.*, No. 8:16-cv-03472-CEH-AAS, Dkt. No. 24 (M.D. Fla. April 18, 2017); *Drozdowski v. Citibank, Inc.*, No. 2:15-cv-2786-STA-cgc, 2016 WL 4544543 (W.D. Tenn. August 31, 2016); *McCormick v. Citibank*, N.A., No. 15-CV-46-JTC, 2016 WL 107911, at *6 (W.D.N.Y. Jan. 8, 2016); *Carr v. Citibank, N.A.,* No. 15-cv-6993 (SAS), 2015 WL 9598797, at *3 (S.D.N.Y. Dec. 23, 2015); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1198-99 (S.D. Cal. 2013); *Coppock v. Citigroup, Inc.,* No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013); *Tractenberg v. Citigroup Inc.,* No. CIV.A. 10-3092, 2011 WL 6747429 (E.D. Pa. Dec. 22, 2011); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172 (N.D. Cal. 2012); *Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG (PLAx), 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012); *Eaves-Leonos v. Assurant, Inc.*, 3:07-CV-18-S, 2008 WL 80173, at *6-7 (W.D. Ky. Jan. 8, 2008); *Taylor v. Citibank USA, N.A.,* 292 F. Supp. 2d 1333 (M.D. Ala. 2003); *Citibank USA v. Howard*, No. 4:02CV64LN, slip. op. at 7, 2002 WL 34573997 (S.D. Miss. Aug. 30, 2002); *Sesto v. Nat'l Fin. Sys., Inc.,* Case No. 04 C 7768, 2005 WL 6519430 (N.D. Ill. Apr. 25, 2005); *Barker v. Citibank (South Dakota), N.A.,* No. A:03CA-130JN, slip. op., 2003 WL 25943008 (W.D. Tex. May 30, 2003). Thus, the same conclusion should be reached here.

150064132-1

theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law"..."arising out of or related to your Account". *See Booth Decl. Exh. 1 and 2.*

### IV. Delegation Clause Delegates Threshold Issues to the Arbitrator.

To the extent the Plaintiff argues his claims do not fall with the scope of the binding arbitration agreement, said arguments are delegated to the AAA pursuant to the valid delegation provision in the Card Agreement by the incorporation of the rules of the American Association Arbitration ("AAA").  The applicable AAA Consumer Arbitration Rules and Mediation Procedures[5], Rule R-1(a) also provides for the incorporation of the AAA rules into a consumer arbitration agreement as follows:

> The parties shall be deemed to have made the Consumer Arbitration Rules ("Rules") a part of their arbitration agreement when they have provided for arbitration by the American Arbitration Association ("AAA") and the arbitration agreement is within a consumer agreement.

The AAA Rule R-7 addresses the jurisdiction of the arbitrator in these circumstances as follows:

(a) The arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim.

---

[5] The AAA Consumer Rules are found at:
https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf

13

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.  Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract.  A decision by the arbitrator that the contact is null and void shall not, for that reason alone, render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the established date for the filing of the answer to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

A provision that provides for the arbitration of threshold issues is referred to as a "delegation provision" and provides that the arbitrator possesses the jurisdiction to decide the issue of whether the subject claims may be arbitrated or, in other words, whether the alleged claim falls within the scope of the arbitration agreement, *to wit* – arbitrability of the claim.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). A delegation provision "is simply an additional, antecedent agreement that a party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.*  The Supreme Court in *Henry Schein, Inc. v. Archer & While Sales, Inc.*, 139 S. Ct. 524, 529 (U.S. 2019), articulated what powers the courts have when there is a delegation provision and who has jurisdiction to preside over the issue of arbitrability, and stated as follows:

We must interpret the [FAA] as written, and the Act in turn requires that we interpret the contract as written.  When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.

14

On this issue, the Eleventh Circuit Court in *Attix v. Carrington Mortg. Servs., LLC* required that you must first determine whether the parties "clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator." 35 F. 4th 1284, 1296 (11th Cir. 2022). Here, it is undisputed that the Accounts were opened and used by the Plaintiff, that the Card Agreements are binding, and that they contain a valid arbitration provision which expressly incorporates the AAA rules. *See Booth Decl. Exh. 1 & 2.* Accordingly, to the extent Plaintiff contests whether his claims fall within the scope of the arbitration provision, this threshold issue of arbitrability has been clearly and unmistakably delegated to the arbitrator based on the Card Agreements' incorporation of the AAA Rules.

This issue was precisely addressed in *Attix* where the parties incorporate the AAA rules for consumer arbitration in their arbitration agreement and identified the above quoted AAA rule on the arbitrator's jurisdiction in this context. *See* 35 F. 4th at 1297. The incorporation language in the *Attix* case and this matter are effectively the same as follows: (i) in *Attix* the provision at issue stated: "The arbitration will be administered by American Arbitration Association ("AAA") under its Consumer Arbitration Rules, which are available at https://www.adr.org/active-rules." *See* 35 F. 4th at 1297, and (2) here, the Account Card Agreement provision states: "Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. You can obtain

15

150064132-1

copies of the AAA Rules at the AAA's website (www.adr.org) or by calling 800-778-7879." *See Booth Decl. Exh. 2.*

Based on this language and considering the same AAA jurisdictional rule, the *Attix* Court found that "[b]y incorporating this AAA rule about the arbitrator's "power to rule on his or her own jurisdiction" into their agreement, Attix and Carrington clearly and unmistakably agreed to arbitrate threshold arbitrability disputes." *Id.* at 1298 (citing *JPay, Inc. v. Kobel*, 904 F.3d 923, 937 (11th Cir. 2018) and *Terminix Int'l Co. v. Palmer Ranch Lt. P'ship*, 432 F.3d 1327,1332 (11th Cir. 2005)).

The Court found that incorporating the AAA Rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability "even if no other delegation language appears elsewhere in the contract". *Id. see also U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308 (11th Cir. 2014). As the Court noted, "...the 'arbitrability of arbitrability' is simply about freedom to decide who decides disputes...The [Supreme] Court's precedents make clear that, when an appeal presents a delegation agreement and a question of arbitrability, we stop. We do not pass go." *Id.* at 1310.

Because application of the AAA rules were expressly included in the arbitration provisions of the Account Card Agreement, they are incorporated into the parties' arbitration agreements and evidence a clear and unmistakable agreement to delegate issues of jurisdiction and arbitrability to the arbitrator. As a result, the inquiry should stop as stated in *Attix*. We do not pass go, and the Motion

16

should be granted compelling this action and any threshold issues as to arbitrability to the arbitrator pursuant to the AAA rules as recently found in *Grimes v. Citigroup Inc., 2025 WL 2652863 (M.D. Fla. September 16, 2025).  See also Emergency Recovery Inc. v. Confier Revenue Cycle Solutions, LLC,* 2025 WL 71974 *7 (S.D. Fla. January 10, 2025), *Whisenhunt v. Ameracat, Inc.,* 731 F. Supp. 3d 1279, 1297 (S.D. Ala. 2024).

## V.    Citibank Has Not Waived Its Right to Arbitrate.

In the final step of analysis, Citibank has not waived the right to arbitration as it is filing this Motion as its first response to the Complaint.

"Like any other contractual right, '[t]he right to arbitrate can be waived.'" *Gutierrez v. Wells Fargo Bank,* NA, 889 F. 3d 1230 (11th Cir. 2018)(citing *Benoay v. Prudential-Bache Sec., Inc.,* 805 F. 2d 1437, 1440 (11th Cir. 1986).  The Florida Supreme Court in *Raymond James Fin. Servs., Inc. v. Saldukas,* 896 So.2d 707, 711 (Fla. 2005), held that wavier is the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right. The analysis for waiver is "focus[ed] on the actions of the person who held the right." *Morgan v. Sundance, Inc.* 142 S. Ct. 1708, 1713 (2022). In Florida, "[a] party's contract right may be waived by actively participating in a lawsuit or taking action inconsistent with that right." *Steward v. Sage Software, Inc.,* No. 6:22-CV-12-WWB-EJK, 2022 WL 4537682, at *2 (M.D. Fla. Sept. 28, 2022)(*citing Klosters Redari A/S v. Arison Shipping Co.*, 280 So. 2d 678, 681 (Fla. 1973)); *Price v. Fax Recovery Systems, Inc.,* 49 So. 3d 835, 837 (Fla.

150064132-1

4th DCA 2010) (finding that, where a party's first substantive filing invokes the arbitration clause, the trial court errs in finding that the party wishing to arbitrate has waived its right to do so).  The Eleventh Circuit in *Gutierrez* stated:

> Careful examination of our precedent reveals that the purpose of the waiver doctrine is to prevent litigants from abusing the judicial process. Acting in a manner inconsistent with one's arbitration rights and then changing course mid-journey smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime. The judicial system was not designed to accommodate a defendant who elects to forego arbitration when it believes that the outcome in litigation will be favorable to it, proceeds with extensive discovery and court proceedings, and then suddenly changes course and pursues arbitration when its prospects of victory in litigation dim. Allowing such conduct would ignore the very purpose of alternative dispute resolution:  saving  the  parties'  time  and  money.

889 F.3d at 1236 (11th Cir. 2018).

Here, Citibank has not acted inconsistent with its right to compel arbitration.

## VI.    The Action Must Be Stayed Pending Arbitration.

As established above, the Plaintiff's claims are clearly subject to arbitration. Once a court determines that claims are subject to arbitration, the Court must stay all proceedings pending arbitration. *See* 9 U.S.C. § 3 (providing that "the court … upon being satisfied that the issue involved in such suit or proceeding is preferable to arbitration … shall on application of one of the parties stay the trial of the action"). This provision is "mandatory" and a court lacks discretion to deny the request to stay. *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *see also Puro Systems, Inc. v. Bevilacqua*, 2010 WL 3259966, at *1 (S.D. Fla. 2010) (observing that "[t]he Eleventh Circuit prefers that district

18

courts stay rather than dismiss arbitrable claims."). Accordingly, this action and all pending discovery should be stayed pending the completion of arbitration.

## CONCLUSION

For all of the foregoing reasons, Citibank respectfully requests that the Court compel arbitration and stay this action until the conclusion of arbitration.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned certifies that he has conferred with Plaintiff in good faith and that Plaintiff opposes the relief sought in this Motion.

Dated this 3rd day of November, 2025.

Respectfully,

*/s/ Andrew C. Wilson*
Louis M. Ursini, III, Esq.
Florida Bar No. 0355940
Primary: louis.ursini@arlaw.com
Secondary: lisa.stallard@arlaw.com

ADAMS AND REESE LLP
100 North Tampa Street, Suite 4000
Tampa, FL  33602
813-402-2880 (Telephone)
813-402-2887 (Facsimile)

Andrew C. Wilson, Esq.
Florida Bar No. 0103203
Primary:  andrew.wilson@arlaw.com
Secondary: Suellen.Kerrigan@arlaw.com

ADAMS AND REESE LLP
2001 Siesta Drive, Suite 320
Sarasota, FL  34239
941-316-7636 (Telephone)
*Counsel for Citibank, N.A.*

19

150064132-1

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of November, 2025, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record and CM/ECF participants.

/s/ *Andrew C. Wilson*
ANDREW C. WILSON
Florida Bar No. 0103203

150064132-1