UNITED STATES DISTRICT COURT
MIDDLE DISTRICT of FLORIDA
TAMPA DIVISION

| | |
|---|---|
| LOGOS I. FARROW,<br><br>    Plaintiff,<br><br>v.<br><br>CAPITAL ONE SERVICES, LLC; CITIBANK, N.A.; DISCOVER FINANCIAL SERVICES; DOVENMUEHLE MORTGAGE, INC; JPMORGAN CHASE BANK, N.A.; SANTANDER CONSUMER USA INC.; EQUIFAX INFORMATION SERVICES, LLC.; EXPERIAN INFORMATION SOLUTIONS, INC.; and TRANS UNION LLC,<br><br>    Defendants. | Case No. **8:25-cv-02417-KKM-SPF** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO CITIBANK, N.A.'s
MOTION TO COMPEL ARBITRATION**

1

# INTRODUCTION

Plaintiff respectfully submits this *Response in Opposition to Citibank, N.A.'s Motion to Compel Arbitration*. Citibank's Motion should be denied because Plaintiff revoked, rescinded, and terminated any alleged agreement to arbitrate before this action was filed, and Citibank failed to produce a valid, signed arbitration agreement demonstrating mutual assent. Further, Citibank's prior breach of the Cardmember Agreement and its violations of the Fair Credit Reporting Act ("FCRA") excuse Plaintiff from any contractual obligation to arbitrate, and the alleged misconduct occurred after Plaintiff's revocation and is based on statutory duties, not contractual terms. For these reasons, this matter properly remains before this Court.

### A. Plaintiff Revoked, Terminated, and Rescinded Any Alleged Arbitration Agreement Before Litigation

Plaintiff took affirmative and unequivocal action to revoke, terminate, and rescind any alleged agreement to arbitrate prior to the commencement of this lawsuit. On July 13, 2025, Plaintiff sent a certified dispute letter to Citibank, N.A., which included Plaintiff's written revocation of any arbitration agreement. The letter was sent via USPS Certified Mail, Tracking No. 9202 8901 4298 0422 4108 03, and delivered to Citibank's servicing location in Sioux Falls, South Dakota 57104 on July 18, 2025, where it was signed for by Citibank's authorized agent. In the concluding section of that letter, Plaintiff expressly stated: "Additionally, due to the apparent fraud and mishandling of my personal data during this process, any prior arbitration agreement is hereby rescinded and revoked." [1]

This written notice clearly communicated Plaintiff's intent to revoke consent, rescind any previous agreement to arbitrate, and terminate any purported contractual obligation to resolve

disputes through arbitration. Following this written rescission, Citibank did not object, did not dispute Plaintiff's rescission, and did not assert any request to preserve or invoke arbitration. Citibank's silence in the face of direct rescission constitutes waiver, acquiescence, and acceptance by conduct, principles long recognized in contract law.

A valid agreement to arbitrate requires ongoing mutual assent. Even assuming arguendo that an arbitration provision existed at account origination, consent to arbitrate is not irrevocable. A party may rescind or revoke such consent, and once rescinded, there must be new assent for arbitration to be enforceable. Plaintiff's written revocation was delivered before litigation and terminated any alleged arbitration agreement. Citibank's failure to assert or preserve any arbitration rights in response to Plaintiff's rescission further confirms that no valid or enforceable arbitration agreement existed at the time Citibank filed its Motion.

[1] Plaintiff's written rescission terminated any alleged arbitration agreement. Citibank's failure to object, respond, or preserve any purported right to arbitrate—despite receiving clear written notice of rescission—constitutes acceptance of the revocation, waiver, and acquiescence. Under established contract-law principles, a party's silence in response to unequivocal rescission supports the conclusion that no agreement to arbitrate remained in effect. **(see Exhibit A)**

### B. Citibank Has Not Produced a Valid, Signed Arbitration Agreement as Required Under *Federal Rule of Evidence 1002*

Citibank bears the burden of establishing the existence of a valid and enforceable arbitration agreement before this Court may compel arbitration. When a party seeks to enforce the contents of a written agreement—such as an arbitration clause—*Federal Rule of Evidence*

*1002* ("Best Evidence Rule") requires the proponent to produce the original document, or a properly authenticated duplicate, that reflects a mutually binding contract. The document must demonstrate assent by both parties to the terms Citibank seeks to enforce. Here, Citibank has not met that burden. The declaration submitted by Kelly Booth attaches a copy of a generic cardmember agreement that contains an arbitration clause, but Citibank has not produced a signed arbitration agreement, nor any evidence that Plaintiff ever agreed to arbitrate disputes. The Booth declaration does not authenticate the document as the *operative agreement* that governed the parties at the time of the dispute, nor does it demonstrate Plaintiff's review, receipt, or acceptance of the arbitration provision contained therein. Critically, the document is unsigned by both parties, and Citibank has presented no executed agreement, signature page, electronic signature record, or other evidence of mutual assent.

A copy of a cardmember agreement is not proof of mutual assent and is insufficient to compel arbitration. As the proponent of arbitration, Citibank must show that Plaintiff knowingly and voluntarily entered into a binding arbitration agreement. It has not done so. Instead, the Booth declaration offers only a form agreement, presented as though it were binding, but without any evidence that Plaintiff agreed to those terms. As such, the Booth declaration attaches a form agreement, not an executed, mutually-binding contract.

Even if Citibank were permitted to rely on a duplicate instead of the original, *FRE 1002* still requires proof that the document being used reflects a valid and enforceable agreement. Citibank has not produced the operative agreement demonstrating (1) Plaintiff's assent, and (2) that any arbitration clause survived Plaintiff's subsequent rescission. Accordingly, Citibank has failed to satisfy the evidentiary burden necessary to enforce arbitration, and its Motion must be denied on this basis alone.

## C. Citibank's Prior Breach of the Citibank Cardmember Agreement and Violations of the FCRA Independently Defeat Arbitration

Plaintiff maintained two Citibank credit card accounts, both of which were governed by the same Citibank Cardmember Agreement ("Cardmember Agreement"). Under the Cardmember Agreement, Citibank expressly undertook a contractual obligation to investigate any dispute raised by the cardholder concerning inaccurate reporting to the Consumer Reporting Agencies ("CRAs"). **The Agreement provides as follows:**

"If you think we've given incorrect information to a Consumer Reporting Agency about you (or about an Authorized User), please write to us at the Customer Service address on your statement and we'll research it. We'll let you know if we agree or disagree with you. If we agree with you, we'll contact each Consumer Reporting Agency we reported to and request a correction."

Plaintiff complied with this requirement by submitting written disputes to Citibank. Despite this clear contractual duty, Citibank failed to research Plaintiff's dispute, failed to notify Plaintiff of the results, and failed to request a correction from the CRAs, as promised under the Cardmember Agreement. Citibank therefore materially breached the contract first.

A party cannot break a contract and then force the other party to honor it. When one party commits a prior material breach, the non-breaching party is excused from further performance under that contract, including any obligations it may contain. Citibank's failure to perform its contractual obligation to investigate Plaintiff's dispute bars it from enforcing the arbitration clause contained in the same contract. To hold otherwise would allow Citibank to disregard the Agreement when convenient, and then selectively enforce it only when advantageous to itself. In addition to breaching the Cardmember Agreement, Citibank's failure to conduct a proper investigation also constitutes a violation of its independent statutory duties under the *Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)*. When a furnisher receives notice of a consumer dispute

from a CRA, it must conduct a reasonable investigation, review all relevant information, and report accurate results. Plaintiff's allegations reflect that Citibank failed to meet both its contractual obligation and its statutory duty.

Because Citibank materially breached the Cardmember Agreement first and simultaneously violated its legal obligations under the FCRA, Plaintiff was excused from any further contractual obligations, including any arbitration provision that Citibank now seeks to enforce. Accordingly, Citibank's own conduct independently defeats its Motion to Compel Arbitration.

**D. Case Law Demonstrates Arbitration Is Improper Under These Circumstances**

Both binding and persuasive authority confirm that arbitration is improper under the circumstances presented in this case. Courts have repeatedly refused to compel arbitration where **(1)** the alleged misconduct occurred after termination or revocation of the agreement, **(2)** the duties at issue arise from independent federal statutes rather than contract, and **(3)** the party seeking arbitration fails to establish mutual assent to arbitrate.

**1. Post-Revocation and Post-Termination Misconduct Is Not Subject to Arbitration**

The Eleventh Circuit has made clear that when alleged wrongful conduct occurs after the contractual relationship has ended, courts must separately assess whether an arbitration provision extends to such post-relationship conduct. *Dasher v. RBC Bank* (USA), No. 13-10257 (11th Cir. 2014) (holding that courts must determine whether an arbitration clause governs claims arising after the agreement has terminated).

Likewise, courts decline to compel arbitration where the dispute concerns post-contract statutory misconduct rather than issues arising from performance of the contract itself. *Wexler v.*

6

*AT&T Corp.*, 211 F. Supp. 3d 500, 503–04 (E.D.N.Y. 2016) (refusing to compel arbitration when alleged wrongdoing occurred after the contract ended and fell outside the scope of the arbitration clause).

Here, Plaintiff expressly revoked, rescinded, and terminated any alleged arbitration agreement on July 13, 2025—before the violations giving rise to this action. Citibank received that written notice and did not dispute or preserve any alleged right to arbitrate. The alleged FCRA violations therefore stem from post-revocation conduct, making arbitration improper.

**2. FCRA Imposes Independent Statutory Duties That Do Not Arise from Any Contract**

The Eleventh Circuit has confirmed that a furnisher's obligations under the Fair Credit Reporting Act are statutory and independent of any private contractual relationship. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302–03 (11th Cir. 2016) (recognizing that duties imposed by § 1681s-2(b) derive from federal law, not contract).

Because the claims asserted arise under the FCRA—not under the Cardmember Agreement—the dispute does not fall within any arbitration clause Citibank seeks to invoke, further supporting denial.

**3. Citibank Has Not Established a Valid and Enforceable Agreement to Arbitrate**

A party seeking to compel arbitration bears the burden of proving the existence of a valid agreement to arbitrate. The Eleventh Circuit has held that mutual assent is required for enforcement of arbitration provisions, just like any other contract term. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1330–31 (11th Cir. 2016) (requiring a showing of assent to arbitrate and rejecting enforcement where the record did not demonstrate agreement). Here, Citibank has not produced a signed agreement demonstrating that Plaintiff agreed to arbitrate any dispute. The declaration of counsel attaching a generic cardmember agreement is

7

insufficient to establish assent. Without proof of a valid and mutually agreed arbitration agreement, the motion must be denied.

## CONCLUSION

For the reasons set forth above, *Citibank's Motion to Compel Arbitration* should be denied. Plaintiff revoked, rescinded, and terminated any alleged arbitration agreement before this action began, Citibank has not produced a signed arbitration agreement demonstrating mutual assent under *Federal Rule of Evidence 1002*, and Citibank's prior material breach of the Cardmember Agreement—along with its violations of the FCRA—excuses Plaintiff from any further contractual obligations. In addition, the alleged misconduct occurred after Plaintiff's revocation and involves statutory duties, further supporting denial of arbitration.

Accordingly, Plaintiff respectfully requests that the Court deny *Citibank's Motion to Compel Arbitration* in its entirety.

Dated on this 5th day of November 2025      Respectfully submitted,

/s/ *Logos I. Farrow*
Logos I. Farrow, Plaintiff, Pro Se
7542 Avocet Drive
Wesley Chapel, FL 33544
SonnyF78@yahoo.com
(813) 781-6308

## Certification

I HEREBY CERTIFY that on this 5th day of November 2025, I filed the foregoing *Response in Opposition to Defendant Citibank, N.A.'s Motion to Compel Arbitration* with the Clerk of Court using the CM/ECF system, which will send electronic notification of the same to all counsel of record who are registered CM/ECF users, including:

*Distribution:*

**Andrew Charles Wilson**
Adams and Reese LLP
2001 Siesta Drive
Suite 302
Sarasota, FL 34239
941-316-7600
Email: andrew.wilson@arlaw.com
*Attorney for CITI Bank, NA.*

**John Emery Springer**
Adams & Reese, LLP
100 N. Tampa Street
Suite 4000
Tampa, FL 33602
727-501-4471
Fax: 813-402-2887
Email: john.springer@arlaw.com
*Attorney for Citibank, N.A.*

**Louis M. Ursini, III**
Adams and Reese LLP
100 North Tampa Street
Suite 4000
Tampa, FL 33602
813-402-2880
Email: louis.ursini@arlaw.com
*Attorney for Citibank, N.A*

# EXHIBIT A



**USPS CERTIFIED MAIL**

9202 8901 4298 0422 4108 03

*PRIORITY MAIL*

Logos Farrow
7542 Avocet Dr
Wesley Chapel FL 33544-2634



0012027350000011
CITI
P.O. Box 6500
Sioux Falls SD 57117
USA

1 of 3

Logos I. Farrow
7542 Avocet Dr
Wesley Chapel, FL 33544
(813) 781-6308
SonnyF78@yahoo.com

July 13, 2025

Citi Brands Credit Bureau Disputes
P.O. Box 6241
Sioux Falls, SD 57117

**Re: Second Notice of Formal Dispute Regarding Inaccurate Reporting**
**Account #: 5424 1813 8506 **** | FCRA Dispute Under 15 U.S.C. §§ 1681i and 1681s-2**

*NOTICE TO AGENT IS NOTICE TO PRINCIPAL — NOTICE TO PRINCIPAL IS NOTICE TO AGENT*

To Whom It May Concern:

This letter serves as a second formal dispute under the Fair Credit Reporting Act (FCRA), specifically 15 U.S.C. § 1681s-2(b), regarding the continued inaccurate, incomplete, and unverified reporting of the above-referenced account.

On June 6, 2025, I submitted a formal written dispute, clearly identifying the specific inaccuracies and providing supporting documentation. Your office received that letter on June 13, 2025, as confirmed by the signed USPS delivery confirmation. Reference USPS tracking number 9214 8901 4298 0419 8977 35.

Your response dated July 2, 2025, fails to satisfy your obligations under the FCRA. You claimed you could not investigate the matter due to a lack of clarity regarding the disputed information. This is false. My prior letter included:

- Specific tradeline details such as incorrect dates, high balance, payment history, and reporting status;
- A copy of my identity verification documents;
- A full credit report showing the erroneous data.

You are required under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation and report the results to the consumer reporting agencies. Moreover, under § 1681i(a), you are responsible for correcting or deleting any inaccurate, incomplete, or unverified information. You have done neither.

Furthermore, on July 13, 2025, I pulled an updated three-bureau credit report. The account continues to reflect the same inaccurate information that I disputed in my original letter. No updates, corrections, or deletions have been made.



2 of 3

This letter serves as notice that your continued reporting of unverified and inaccurate data is a violation of federal law. I demand the following:

1. A comprehensive reinvestigation into the disputed information;
2. All supporting documentation used to verify the accuracy of the tradeline;
3. Correction or deletion of any data that cannot be verified;
4. Written confirmation of the outcome of your reinvestigation.

If you fail to comply or respond within 15 days, I may be forced to pursue legal action under 15 U.S.C. § 1681n and § 1681o for statutory, actual, and punitive damages. Furthermore, I will be filing complaints with the Consumer Financial Protection Bureau (CFPB) and the Better Business Bureau (BBB).

 Additionally, due to the apparent fraud and mishandling of my personal data during this  process, any prior arbitration agreement is hereby rescinded and revoked.

Sincerely,

/s/ Logos I. Farrow
Logos I. Farrow
Date of Birth: 10/28/1978
SSN (last 4): 2073

Enclosures:

- Copy of government-issued ID
- Proof of current address
- Credit Reports (06/05/2025 and 07/13/2025)
- USPS Certified Mail Receipt and Signature Confirmation

3 of 3