# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT of FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| LOGOS I. FARROW,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE SERVICES, LLC;<br>CITIBANK, N.A.;<br>DOVENMUEHLE MORTGAGE,<br>INC; JPMORGAN CHASE BANK,<br>N.A.; EXPERIAN INFORMATION<br>SOLUTIONS, INC.,<br><br><br>Defendants. | Case No. **8:25-cv-02417-KKM-SPF** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO CITIBANK, N.A.'s MOTION TO COMPEL ARBITRATION

### INTRODUCTION

Plaintiff respectfully submits this *Response in Opposition to Citibank, N.A.'s Motion to Compel Arbitration.* Citibank's Motion should be denied because Plaintiff revoked, rescinded, and terminated any alleged agreement to arbitrate well before this action was filed, and Citibank has failed to produce a valid, signed arbitration agreement demonstrating knowing and voluntary mutual assent to arbitrate.

1

Further, Citibank's prior material breach of the Cardmember Agreement and its violations of the Fair Credit Reporting Act ("FCRA") excuse Plaintiff from any contractual obligation to arbitrate, and Citibank's continued misconduct after Plaintiff's revocation arises from independent statutory duties rather than contractual terms. For these reasons, this matter properly remains before this Court.

## A. Plaintiff Revoked, Terminated, and Rescinded Any Alleged Arbitration Agreement Before Litigation

Plaintiff took affirmative and unequivocal action to revoke, terminate, and rescind any alleged agreement to arbitrate prior to the commencement of this lawsuit. On July 13, 2025, Plaintiff sent a certified dispute letter to Citibank, N.A., which included Plaintiff's written revocation of any arbitration agreement. The letter was sent via USPS Certified Mail, Tracking No. 9202 8901 4298 0422 4108 03, and delivered to Citibank's servicing location in Sioux Falls, South Dakota on July 18, 2025, where it was signed for by Citibank's authorized agent. In that letter, Plaintiff expressly stated: "Additionally, due to the apparent fraud and mishandling of my personal data during this process, any prior arbitration agreement is hereby rescinded and revoked." (See Exhibit A).

Arbitration is a matter of contract and requires continuing mutual assent. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Whether a valid agreement to arbitrate existed at the time arbitration was invoked, including whether any such agreement was terminated or rescinded, is a question for the Court, not an arbitrator. *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299–300 (2010).

2

Here, Plaintiff's written rescission was delivered before litigation and before any demand for arbitration. Following receipt of Plaintiff's rescission, Citibank did not dispute the termination, did not demand arbitration, and did not assert that any arbitration agreement remained in effect. Citibank's later attempt to compel arbitration, only after Plaintiff filed suit, underscores that no continuing mutual assent to arbitrate existed at the time this dispute arose.

Moreover, as set forth below, Citibank had already materially breached the Cardmember Agreement and violated its statutory duties under the Fair Credit Reporting Act before Plaintiff's rescission. A party that commits a prior material breach cannot enforce the remaining provisions of the contract, including an arbitration clause. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984). When a contract has been terminated or rendered inoperative, its arbitration provision does not survive. *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1117–18 (11th Cir. 2014).

Accordingly, because Plaintiff rescinded any alleged agreement to arbitrate before litigation, because Citibank had materially breached first, and because no continuing mutual assent existed at the time Citibank invoked arbitration, no valid or enforceable arbitration agreement existed when this Motion was filed.

### B. Citibank Has Failed to Prove the Existence of a Valid Agreement to Arbitrate

Citibank bears the burden of proving that a valid and enforceable agreement to arbitrate exists. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d (11th Cir. 2016). "The party seeking to compel arbitration must prove that the parties agreed to arbitrate." *Id.* Where the existence of an arbitration agreement is disputed, the Court, not the arbitrator, must resolve that threshold issue. *Granite Rock Co. v. Teamsters*, 561 U.S. 287 (2010).

3

Here, Citibank has produced no signed arbitration agreement, no electronic signature, no acknowledgment of receipt, and no evidence that Plaintiff knowingly and voluntarily assented to arbitrate. Instead, Citibank relies on a generic declaration and form Cardmember Agreements that are not tied to Plaintiff by any competent evidence.

Citibank has produced no signed or authenticated writing reflecting Plaintiff's assent to arbitrate and thus has failed to carry its burden of proving the existence of a mutually binding arbitration agreement. *See Bazemore*, 827 F.3d at 1329-30; *Fed. R. Evid. 1002.*

Although the Cardmember Agreement states that use of the card renders the Agreement generally effective, neither the Agreement nor the Booth Declaration contains any language establishing that Plaintiff knowingly and voluntarily assented to the arbitration provision or clearly waived his right to a judicial forum. Arbitration requires more than general contract acceptance; it requires specific and unmistakable consent to forgo the right to litigate in court. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate unless there is 'clear and unmistakable' evidence that they did so.").

Booth does not testify that Plaintiff received the arbitration provision, read it, understood it, or agreed to it. No witness establishes that Plaintiff knowingly waived his right to a judicial forum. Continued use of a credit card, standing alone, does not constitute clear and unmistakable assent to arbitration. *Bazemore*, 827 F.3d at 1330 (rejecting arbitration where the defendant failed to prove that the plaintiff agreed to the arbitration provision).

4

Absent competent evidence of knowing and voluntary assent to the arbitration clause itself, this Court must deny Citibank's Motion to Compel Arbitration.

### C. Citibank's Prior Breach of the Citibank Cardmember Agreement and    Violations of the FCRA Independently Defeat Arbitration

Even if Citibank could establish that a valid arbitration agreement once existed, which it cannot, Citibank is barred from enforcing that agreement because it materially breached first and because Plaintiff's claims arise from independent statutory duties imposed by the Fair Credit Reporting Act ("FCRA"), not from the Cardmember Agreement.

As alleged in the Second Amended Complaint, Citibank failed to conduct a reasonable investigation after receiving Plaintiff's disputes, failed to correct inaccurate reporting, and continued to furnish false information to consumer reporting agencies, in violation of 15 U.S.C. § 1681s-2(b). These duties arise by statute, not by contract, and exist independently of any Cardmember Agreement.

In addition, Citibank expressly undertook these same duties by contract. The Cardmember Agreement attached to Booth's Declaration provides:

"If you think we've given incorrect information to a Consumer Reporting Agency about you (or about an Authorized User), please write to us at the Customer Service address on your statement and we'll research it. We'll let you know if we agree or disagree with you. If we agree with you, we'll contact each Consumer Reporting Agency we reported to and request a correction." *(Cardmember Agreement Sec. 8, attached to Booth Decl.)*

Citibank does not dispute that Plaintiff submitted written disputes, does not dispute that it failed to conduct a reasonable investigation, and does not dispute that it continued to furnish inaccurate information after receiving those disputes. Citibank therefore breached both its

statutory duties under the FCRA and its express contractual obligations under the Cardmember Agreement before it demanded arbitration.

The Supreme Court has made clear that arbitration may not be enforced where it operates as a prospective waiver of federal statutory rights or prevents the effective vindication of those rights. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). Here, Citibank seeks to compel arbitration not to enforce a mutually agreed forum, but to avoid judicial scrutiny of its violations of federal law.

Moreover, under fundamental principles of contract law, a party that commits a prior material breach cannot enforce the remaining provisions of the contract, including an arbitration clause. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("A material breach by one party may excuse the other party's performance."). Where a contract has been terminated or rendered inoperative by prior breach, its arbitration provision does not survive. *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1117–18 (11th Cir. 2014).

Here, Citibank's Motion rests on the erroneous presumption that Plaintiff's claims arise from or depend on the Cardmember Agreement. They do not. Plaintiff's FCRA claims arise from Citibank's post-relationship misconduct in furnishing inaccurate information and failing to investigate disputes, conduct that occurred after any alleged agreement and that violates duties imposed directly by Congress.

Citibank's attempt to compel arbitration only after Plaintiff filed suit confirms that it seeks to use arbitration as a shield against its own contractual and statutory violations, not as a

6

mutually agreed forum. Because Plaintiff's claims arise from independent federal statutory duties, because Citibank materially breached first, and because Citibank violated its own express contractual promises before demanding arbitration, Citibank cannot enforce an arbitration clause to avoid judicial review. The Motion to Compel Arbitration must therefore be denied.

### D. Citibank's Remaining Authorities Do Not Support Compelling Arbitration

Citibank's remaining arguments rely primarily on severability principles, *Jackson v. Discover Financial Services*, and generalized presumptions favoring arbitration. None support compelling arbitration here.

First, Citibank's reliance on severability doctrine and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), is misplaced. Plaintiff does not challenge the Cardmember Agreement as a whole, but specifically challenges the existence, formation, and continued enforceability of the arbitration provision itself as applied to this dispute. Where a party challenges whether an arbitration agreement was ever formed or remained in effect, that question is for the Court, not the arbitrator. *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299-300 (2010). *Buckeye* does not apply to challenges directed at the arbitration clause itself.

Second, Citibank's reliance on *Jackson v. Discover Financial Services* is inapposite. *Jackson* involved a plaintiff who attempted to invoke a contractual opt-out provision years after account opening. Here, Plaintiff does not rely on an opt-out clause but asserts rescission and termination following Citibank's prior material breach and statutory misconduct. *Jackson* did not address rescission for breach, termination of assent, or post-relationship statutory violations. It therefore has no application here.

7

Third, Citibank identifies no valid delegation clause requiring this Court to send questions of formation or termination to an arbitrator. Absent "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability, these threshold issues remain for the Court. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Citibank has not met that burden.

Finally, while federal policy favors arbitration, that policy applies only after a valid agreement to arbitrate is established. *Granite Rock*, 561 U.S. at 302. It does not permit courts to compel arbitration where no agreement was formed, where the agreement was terminated, or where the claims arise from independent statutory duties.

Because Citibank has failed to establish a valid and enforceable arbitration agreement, and because its cited authorities do not address the formation, termination, and statutory issues presented here, its Motion to Compel Arbitration must be denied.

## CONCLUSION

For the foregoing reasons, Citibank has failed to establish a valid and enforceable agreement to arbitrate, has failed to show that any such agreement remained in effect at the time this dispute arose, and has failed to justify compelling arbitration of Plaintiff's independent federal statutory claims. Accordingly, Plaintiff respectfully requests that the Court deny Citibank's Motion to Compel Arbitration and Stay Proceedings.

Dated on this 23rd day of January 2026                 Respectfully submitted,

8

/s/ *Logos I. Farrow*
Logos I. Farrow, Plaintiff, Pro Se
7542 Avocet Drive
Wesley Chapel, FL 33544
SonnyF78@yahoo.com
(813) 781-6308

## Certification

I HEREBY CERTIFY that on this 23rd day of January 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using USPS certified mail, which will automatically serve all counsel of record via CM/ECF.

*Distribution:*

Andrew Charles Wilson
Adams and Reese LLP
2001 Siesta Drive
Suite 302
Sarasota, FL 34239
941-316-7600
Email: andrew.wilson@arlaw.com
*Attorney for CITI Bank, NA.*

John Emery Springer
Adams & Reese, LLP
100 N. Tampa Street
Suite 4000
Tampa, FL 33602
727-501-4471
Fax: 813-402-2887
Email: john.springer@arlaw.com
*Attorney for Citibank, N.A.*

Louis M. Ursini, III
Adams and Reese LLP
Email: louis.ursini@arlaw.com
*Attorney for Citibank, N.A*

9

# Exhibit A

12027350.1 1-78



**USPS CERTIFIED MAIL**

9202 8901 4298 0422 4108 03

***PRIORITY MAIL***

Logos Farrow
7542 Avocet Dr
Wesley Chapel FL 33544-2634

0012027350000011

CITI
P.O. Box 6500
Sioux Falls SD 57117
USA

/ of 3

Logos I. Farrow
7542 Avocet Dr
Wesley Chapel, FL 33544
(813) 781-6308
SonnyF78@yahoo.com

July 13, 2025

Citi Brands Credit Bureau Disputes
P.O. Box 6241
Sioux Falls, SD 57117

**Re: Second Notice of Formal Dispute Regarding Inaccurate Reporting**
**Account #: 5424 1813 8506 **** | FCRA Dispute Under 15 U.S.C. §§ 1681i and 1681s-2**

*NOTICE TO AGENT IS NOTICE TO PRINCIPAL — NOTICE TO PRINCIPAL IS NOTICE TO AGENT*

To Whom It May Concern:

This letter serves as a second formal dispute under the Fair Credit Reporting Act (FCRA), specifically 15 U.S.C. § 1681s-2(b), regarding the continued inaccurate, incomplete, and unverified reporting of the above-referenced account.

On June 6, 2025, I submitted a formal written dispute, clearly identifying the specific inaccuracies and providing supporting documentation. Your office received that letter on June 13, 2025, as confirmed by the signed USPS delivery confirmation. Reference USPS tracking number 9214 8901 4298 0419 8977 35.

Your response dated July 2, 2025, fails to satisfy your obligations under the FCRA. You claimed you could not investigate the matter due to a lack of clarity regarding the disputed information. This is false. My prior letter included:

- Specific tradeline details such as incorrect dates, high balance, payment history, and reporting status;
- A copy of my identity verification documents;
- A full credit report showing the erroneous data.

You are required under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation and report the results to the consumer reporting agencies. Moreover, under § 1681i(a), you are responsible for correcting or deleting any inaccurate, incomplete, or unverified information. You have done neither.

Furthermore, on July 13, 2025, I pulled an updated three-bureau credit report. The account continues to reflect the same inaccurate information that I disputed in my original letter. No updates, corrections, or deletions have been made.



This letter serves as notice that your continued reporting of unverified and inaccurate data is a violation of federal law. I demand the following:

1. A comprehensive reinvestigation into the disputed information;
2. All supporting documentation used to verify the accuracy of the tradeline;
3. Correction or deletion of any data that cannot be verified;
4. Written confirmation of the outcome of your reinvestigation.

If you fail to comply or respond within 15 days, I may be forced to pursue legal action under 15 U.S.C. § 1681n and § 1681o for statutory, actual, and punitive damages. Furthermore, I will be filing complaints with the Consumer Financial Protection Bureau (CFPB) and the Better Business Bureau (BBB).

Additionally, due to the apparent fraud and mishandling of my personal data during this process, any prior arbitration agreement is hereby rescinded and revoked.

Sincerely,

/s/ Logos I. Farrow
Logos I. Farrow
Date of Birth: 10/28/1978
SSN (last 4): 2073

Enclosures:

- Copy of government-issued ID
- Proof of current address
- Credit Reports (06/05/2025 and 07/13/2025)
- USPS Certified Mail Receipt and Signature Confirmation

3 of 3