**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LOGOS I. FARROW,

      Plaintiff,

v.                                          Case No. 8:25-cv-2417-KKM-SPF

CITIBANK, N.A. et al.

      Defendants.

_____

## <u>ORDER</u>

Plaintiff Logos Farrow sues Citibank, N.A., and other defendants for alleged violations of the Fair Credit Reporting Act. *See* 2d Am. Compl. (Doc. 122). Citibank moves to compel arbitration of Farrow's claims and stay proceedings based on an arbitration provision within Farrow's two Citibank credit card agreements. Mot. (Doc. 128). Farrow opposes. Resp. (Doc. 133). For the below reasons, I grant Citibank's motion.

## I.    BACKGROUND

On June 6, 2025, Farrow "sent a formal written dispute to Citibank, N.A. regarding inaccurate reporting on multiple accounts," including two credit card accounts, and attached to his dispute letter a "credit report identifying inaccurate and inconsistent tradeline information." 2d Am. Compl. ¶¶ 43–44. According to Farrow, "Citi responded, but its letter falsely claimed the disputes

lacked clarity." *Id.* ¶ 45. As a result of the inaccuracies on his credit report, Farrow says that he was denied a $65,650 auto loan. *Id.* ¶ 47. Farrow then sued Citibank and others for alleged violations of the Fair Credit Reporting Act (FCRA). Farrow alleges that Citibank was "required under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation" into his disputes but failed to do so, thereby "continu[ing] to furnish inaccurate, incomplete, and misleading information" to credit reporting agencies. *Id.* ¶¶ 89–91.

Citibank moves to compel arbitration and stay the action based on agreements governing Farrow's Citi Double Cash and Costco credit cards issued by Citibank. *See* Mot. at 2. Citibank issued the credit cards to Farrow on April 15, 2021, and September 24, 2021, respectively. Mot. at 3. Each credit card is subject to a substantially identical Card Agreement provided to Farrow when he applied for credit. *Id.*; *see* Booth Decl. (Doc. 128-1) ¶¶ 5–9 (attaching the Card Agreement and letter mailed to Farrow for each account). The Card Agreements are governed by South Dakota law and state: "This Agreement takes effect once you use your Card. Even if you don't use your Card, this Agreement will take effect unless you contact us to cancel your Account within 30 days after we sent you this Agreement." Booth Decl. at 12, 20 (Ex. 1); *id.* at 30, 36 (Ex. 2). Farrow used each credit card after opening the accounts. *Id.* ¶¶ 13–14; *id.* at 38–40 (Ex. 3), 41–43 (Ex. 4).

2

Section 11 the Card Agreements contains a nearly identical arbitration provision explaining "that disputes may be resolved by binding arbitration" and that the provision is "governed by the Federal Arbitration Act." *Id.* at 19 (Ex. 1), 35 (Ex. 2). Either "[Farrow] or [Citibank] may arbitrate any claim, dispute or controversy between [Farrow] and [Citibank] arising out of or related to [Farrow's] Account, a previous related Account, or our relationship." *Id.* Claims are subject to arbitration "no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, . . . negligence, statutory or regulatory provisions, or any other sources of law." *Id.* "Arbitration shall be conducted by the American Arbitration Association . . . according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed." *Id.*

Citibank customers "may reject this arbitration provision by sending a written rejection notice to [Citibank] . . . . within 45 days of the Account opening." *Id.* at 21 (Ex. 1), 38 (Ex. 2). Although Farrow opened both accounts in 2021, he did not "sen[d] a certified dispute letter to Citibank, N.A., which included [his] written revocation of any arbitration agreement" until July 13, 2025. Resp. at 2. Farrow purported to "rescind[]" the arbitration agreement based on "the apparent fraud and mishandling of [his] personal data" by Citibank. *Id.* Accordingly, Farrow seeks to continue litigating in this Court.

## II.    LEGAL STANDARD

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). The Federal Arbitration Act (FAA) reflects a liberal federal policy favoring arbitration. *Jpay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018). If parties agree to arbitrate, the court must enforce that agreement so long as the party seeking arbitration has not waived its right to do so. *Id.*; *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (per curiam).

Of course, "the FAA does not allow a court to compel arbitration unless it is satisfied that the parties agreed to arbitrate." *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1346 (11th Cir. 2025) (citing *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147–49 (2024)). "Before referring a dispute to an arbitrator, therefore, the court determines whether a valid arbitration agreement exists." *Id.* (quoting *Coinbase*, 602 U.S. at 149). When a party seeking to avoid arbitration claims that no agreement exists, "[s]tate law generally governs" because "whether an arbitration agreement exists at all is simply a matter of contract." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (citation modified).

The Court employs a "summary judgment-like standard" to determine whether an arbitration agreement exists. *Id.* at 1333. If there is a genuine

4

dispute of fact concerning the making of the arbitration agreement, the FAA instructs that "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see also Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). "A dispute is not genuine if it is unsupported by the evidence or is created by evidence that is merely colorable or not significantly probative." *Bazemore*, 827 F.3d at 1333 (citation modified). If there is no genuine dispute of fact and the Court determines that an applicable agreement to arbitrate exists, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

## III.   ANALYSIS

In support of its motion, Citibank provides a sworn declaration from its employee Kelly Booth explaining that Farrow began using two Citibank credit cards in 2021. *See generally* Booth Decl. Citibank also provides copies of the letters mailed to Farrow with each card, as well as the governing Card Agreements. *See id.* at 6–37. By using the credit cards, Citibank contends that Farrow agreed to arbitrate disputes related to his accounts and did not follow the procedure for opting out of the arbitration provisions. *Id.* ¶¶ 5–11.

In response, Farrow makes three primary arguments: (1) he "revoke[d], terminate[d], and rescinde[d] any alleged agreement to arbitrate prior to the commencement of this lawsuit;" (2) Citibank "produced no signed arbitration agreement" or evidence that Farrow "knowingly and voluntarily assented to

5

arbitrate;" and (3) Citibank cannot enforce any arbitration agreement "because it materially breached first and because [Farrow's] claims arise from independent statutory duties imposed by [FCRA]." Resp. at 2–7. Each response fails, and Farrow does not persuade that there is a genuine dispute of material fact regarding formation of an arbitration provision.

## A. Citibank establishes the existence of a valid and enforceable arbitration agreement between the parties

I start first with Farrow's second argument, because the threshold question that I must answer is "whether an enforceable contract or agreement to arbitrate exists." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (citation modified). In making that initial determination, I "apply ordinary state-law principles that govern the formation of contracts." *Senti v. Sanger Works Factory, Inc.*, No. 6:06-cv-1903-Orl-22DAB, 2007 WL 1174076, at *5 (M.D. Fla. Apr. 18, 2007) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Under South Dakota law, which, along with federal law, "govern[s] the terms and enforcement of" the Card Agreement, Booth Decl. at 20, 36, "[t]he use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer," S.D. CODIFIED LAWS § 54-11-9; *Umana v.*

6

*Citigroup, Inc.*, No. 18-60977-CIV, 2018 WL 11473760, at \*3 (S.D. Fla. Nov. 5, 2018) (collecting cases applying this principle of South Dakota law to credit card arbitration agreement formation). Additionally, "South Dakota recognize[s] a presumption of receipt when a mailing is properly sent through regular office procedures." *Clookey v. Citibank, N.A.*, 2015 WL 8484514, at \*3 (N.D.N.Y. Dec. 9, 2015).

Here, Citibank provides "a copy of the letter that was mailed to" Farrow and "a copy of the Card Agreement mailed to [Farrow] with the actual credit card," Booth Decl. ¶¶ 6, 9, and its "records confirm that [Farrow] was provided with the Card Agreement" for each card, *id.* ¶¶ 8, 11. Farrow's monthly billing statements confirm that he used the cards, a fact which Farrow does not dispute. *See* Exs. 3–4; *see generally* Resp. Farrow's response that Citibank failed to produce a signed agreement, acknowledgement of receipt, or other evidence that he "received the arbitration provision, read it, understood it, or agreed to it" misses the mark under the governing state law. Resp. at 3–4. Instead, because South Dakota law controls the question of formation, Citibank has produced all the evidence it must to prove that Farrow accepted the Card Agreements' terms, including the agreement to arbitrate "any claim, dispute or controversy." Ex. 1 at 19; Ex. 2 at 35. Citibank's sworn declaration and copies of the letters and Card Agreements mailed to Farrow suffice to establish the formation of a valid arbitration agreement. *Cf. Lamonaco*, 141

7

F.4th at 1348 (holding that, under Florida law, "[a] declaration that sets forth specific facts based on personal knowledge, describes the enrollment process, and appends the operative contract is competent evidence sufficient to satisfy [the movant's] initial burden").

### B. Farrow failed to timely opt out of arbitration

Even though Citibank has met its burden to establish the formation of a valid arbitration agreement, Farrow avers that he "took affirmative and unequivocal action to revoke, terminate, and rescind any alleged agreement to arbitrate prior to commencement of this lawsuit," thereby defeating the necessary "continuing mutual assent." Resp. at 2. Farrow's argument overlooks the FAA, which provides that any arbitration agreement to which the statute applies "shall be valid, *irrevocable*, and enforceable." 9 U.S.C. § 2 (emphasis added).

Per the Card Agreements, Farrow could have "reject[ed]" the embedded arbitration agreement altogether. To do so, Farrow needed to mail a rejection notice "within 45 days of Account opening." Booth Decl. ¶¶ 7, 10. Citibank's employee declarant determined that Farrow "did not choose to reject the arbitration agreement" "because it was Citibank's regular practice to include a note in the computerized account records of those card members who chose to opt out," and "[t]he records for [Farrow's accounts] do not reflect any such note." *Id.* ¶¶ 8, 11. Farrow does not contest Citibank's evidence, nor does he

8

dispute that he continued using his card after the rejection period expired. *See generally* Resp. Because Farrow "only explicitly attempted to reject the arbitration agreement in [July 2025], well past the [forty-five-day] window to opt-out from arbitration," *Jackson v. Discover Fin. Servs.*, No. 3:23-CV-1097-TJC-SJH, 2024 WL 4554658, at \*5 (M.D. Fla. Aug. 7, 2024), the validly formed agreement was no longer revocable and must be enforced.

### C. Citibank's alleged violations of the Card Agreement do not affect the existence or validity of the arbitration agreement, and thus must go to the arbitrator

Finally, Farrow argues that even if "a valid arbitration agreement once existed," "Citibank is barred from enforcing that agreement because it materially breached first and because [his] claims arise from independent statutory duties imposed by [FCRA]." Resp. at 5. As Citibank correctly argued in anticipation of Farrow's position, Farrow fails to recognize that the arbitration agreement is severable from the Card Agreement. *See* Mot. at 21–22. Contract-wide challenges like Farrow's must go to the arbitrator. Insofar as Farrow contests the arbitration provision's scope, that question, too, is for the arbitrator. *Id.*

On the first point, whether Citibank breached the Card Agreements is immaterial to the arbitration agreement's validity. That is because an arbitration agreement is severable from the rest of a contract. *See, e.g.*, *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (citation modified).

When a party challenges the contract as a whole—rather than specifically the arbitration provision within it—that challenge must be referred to the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). Here, Farrow contends that Citibank breached its obligation under the Card Agreements to "research" whether it transmitted "incorrect information to a Consumer Reporting Agency." Resp. at 5 (quoting Booth Decl. at 18, 34). But Citibank's obligation—and the purported breach thereof—exists outside of the arbitration provision, and thus Farrow raises "a challenge to the validity of the contract as a whole." *Buckeye Check Cashing*, 546 U.S. at 449. That challenge "must go to the arbitrator." *Id.*

As for whether Farrow's FCRA claims are subject to arbitration, the arbitration agreement also delegates that question to the arbitrator. The FAA permits parties to agree that an arbitrator will decide whether a certain claim falls within the scope of an arbitration provision, i.e., "arbitrability." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 65 (2019). Parties agree to arbitrate arbitrability only "where there is clear and unmistakable evidence that they did so." *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (citation modified). "[W]hen parties incorporate the rules of the [AAA] into their contract, they clearly and unmistakably agree that the arbitrator should decide whether the arbitration clause applies." *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014)

10

(citation modified). Further, an arbitration agreement's incorporation of AAA rules clearly and unmistakably evinces an intent to delegate arbitrability even if no other delegation language appears in the contract. *See JPay,* 904 F.3d at 937.

Here, the Card Agreements' arbitration provision expressly incorporates AAA rules. *See* Ex. 1 at 19; Ex. 2 at 35 ("Arbitration shall be conducted by the [AAA] . . . according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed."). The applicable AAA rules provide that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." Mot. at 14 (quoting AAA Consumer Arbitration Rules and Mediation Procedures, Rule R-7(a)). The incorporation of the AAA rules evinces the parties' mutual agreement to have the arbitrator decide whether Farrow's FCRA claims are arbitrable. *See, e.g., Cyanotech,* 769 F.3d at 1311. Because the FAA permits the parties to do as much, I do not decide the arbitrability question in the first instance.[1]

---

[1] I also do not decide questions about the "existence, scope, or validity of the arbitration agreement" because, under the incorporated AAA rules, those questions have been delegated to the arbitrator. *See Attix,* 35 F.4th at 1303. Insofar as I conclude that the parties formed a valid and enforceable arbitration agreement, that conclusion is limited to the "nested" delegation provision, which "*is itself* an arbitration agreement." *Id.* (citing *Henry Schein,* 586 U.S. at 68); *see id.* at 1295 ("As with any arbitration agreement, before enforcing a delegation agreement, the court

### D. Farrow's claims against the remaining defendants are not arbitrable and may proceed in this Court

Because I conclude that Farrow and Citibank formed an arbitration agreement, I "must stay" the action against Citibank pending arbitration. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (citing 9 U.S.C. § 3). That leaves the question of how to handle Farrow's FCRA claims against the remaining defendants, Chase Bank N.A., Experian Information Solutions, Inc., Dovenmuehle Mortgage, Inc., and Capital One Services, N.A. *See* 2d Am. Compl.

"When confronted with litigants advancing both arbitrable and nonarbitrable claims, however, courts have discretion to stay nonarbitrable claims." *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004). Generally, courts "refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation," a determination that requires asking "whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Id.* When it is feasible to proceed with litigation on remaining claims against remaining

---

should ensure that the agreement was formed, that it applies to the dispute at hand, and that no grounds render it invalid or unenforceable."); *see also Lamonaco*, 141 F.4th at 1349 ("[I]f a contract contains an arbitration clause with a delegation provision, then, 'absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration.'" (quoting *Coinbase*, 602 U.S. at 152)). Farrow does not specifically challenge the formation of the delegation provision.

12

parties, the FAA contemplates "piecemeal" litigation. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

There is no suggestion here that Farrow's arbitrable claims against Citibank "predominate" over claims against other defendants, or that the outcome of arbitration will dictate the resolution of nonarbitrable claims. Although Farrow's complaint exclusively brings claims for FCRA violations, the other claims relate to different accounts with different creditors, as well as separate claims against a credit reporting agency for failure to reasonably investigate. *See* 2d Am. Compl. ¶¶ 36–71. More, the remaining defendants have either answered or moved to dismiss without seeking to compel arbitration or stay the action. *See* (Docs. 130, 131, 137, 138). I conclude that it is feasible to permit litigation of nonarbitrable claims and thus stay proceedings only as against Citibank.

## IV.    CONCLUSION

Accordingly, the following is **ORDERED**:

1. Defendant Citibank, N.A.'s Motion to Compel Arbitration (Doc. 128) is **GRANTED.**

2. Plaintiff's claims against Citibank, N.A. are **REFERRED** to arbitration under the parties' agreement.

3. Plaintiff's claims against Citibank, N.A. are **STAYED** pending arbitration.

13

4.      Plaintiff and Citibank, N.A. must file a status report on **May 18, 2026**, and every ninety days thereafter, apprising the Court of the arbitration's progress. The parties must file a notice within fourteen days of the conclusion of the arbitration proceeding.

**ORDERED** in Tampa, Florida, February 17, 2026.


Kathryn Kimball Mizelle
United States District Judge

14